**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

               **Plaintiff,**           08-CV-0850A(Sr)

**v.**

**NATIVE WHOLESALE SUPPLY CO.,**

               **Defendant.**

---

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**NATIVE WHOLESALE SUPPLY COMPANY,**

               **Plaintiff,**           09-CV-0241A(Sr)

**v.**

**THOMAS VILSACK, in his capacity as**
**Secretary of the United States Department**
**of Agriculture,**

               **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

The two above-captioned cases, *United States of America v. Native Wholesale Supply Co.*, Case No. 08-CV-850 (hereinafter referred to as "the First Filed Action") and *Native Wholesale Supply Company v. Thomas Vilsack, in his capacity as Secretary of the United States Department of Agriculture*, Case No. 09-CV-241 (hereinafter referred to as "the Second Filed Action"), were referred to the undersigned

by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. ##30 and 6, respectively.

Currently before this Court in the First Filed Action is the government's motion for summary judgment (Dkt. #7) and Native Wholesale Supply Co.'s motion to consolidate the Second Filed Action with the First Filed Action (Dkt. #24). In the Second Filed Action, the government's motion to dismiss or in the alternative to stay is currently pending before this Court. Dkt. #8. A more complete discussion of the procedural history of both cases follows. For the following reasons, Native Wholesale Supply Co.'s motion to consolidate the Second Filed Action with the First Filed Action is granted. By reason of this Court's decision to consolidate the Second Filed Action with the First Filed Action, this Court recommends that the government's motion to dismiss or in the alternative stay the proceedings in the Second Filed Action be denied. This Court further recommends that consideration of the government's motion for summary judgment in the First Filed Action be held in abeyance pending resolution of the issues raised by Native Wholesale Supply Co. in the Second Filed Action.

## FAIR AND EQUITABLE TOBACCO REFORM ACT

The Fair and Equitable Tobacco Reform Act of 2004 ("FETRA") was enacted in 2004 as Title VII of the American Jobs Creation Act of 2004, Pub. L. No. 108-357, §§ 601-43, 118 Stat. 1418, 1521-36 (2004) (codified at Title 7, United States Code, Section 518, *et seq.*). In the memorandum of law submitted in support of its motion for summary judgment, the government summarized the pre-FETRA regulatory

landscape as follows. Prior to the enactment of FETRA, the supply of domestic tobacco for sale in the United States was regulated through quota programs established by the Agricultural Adjustment Act of 1938 ("1938 Act"). Dkt. #7-2, p.2. "Under the 1938 Act, tobacco producers were permitted to market, without incurring a penalty, only as much acreage or poundage of tobacco for which they held an acreage allotment or marketing quota." Dkt. #7-2, p.2. The price of domestic tobacco was controlled through price support systems established by the Agricultural Act of 1949 ("1949 Act"). *Id*. "Under the 1949 Act, if eligible tobacco producers could not sell their tobacco on the open market at a rate exceeding a support price established by the Commodity Credit Corporation ("CCC") of the United States Department of Agriculture ("USDA"), they could sell instead to one of several producer-owned cooperative associations established pursuant to that Act. CCC would loan the associations the value of the tobacco the associations had purchased, and the tobacco would serve as collateral for the loans. The associations would eventually sell the tobacco at a CCC-approved price, and the proceeds of those sales would serve as payment of the associated loans." Dkt. #7-2, p.2 (internal citations omitted). Both the quota program and the price support systems were administered by the United States Department of Agriculture. *Id*.

"FETRA transformed the tobacco production system into a free market system at the end of 2004 by terminating the tobacco marketing quota programs established under the 1938 Act and by terminating the tobacco price support programs established under the 1949 Act." Dkt. #7-2, p.3. In addition, FETRA provides that over a ten year period, the Secretary of Agriculture was to make annual payments to owners

of farms that held an established tobacco marketing quota under the 1938 Act, as well as to others engaged in the production of tobacco. These payments were intended to ease the tobacco producers' transition from a highly regulated market to the free market and "to constitute full and fair consideration for the termination of [the] tobacco marketing quotas and related price support." *Id*. (internal citations omitted). In addition, in order to terminate the price support programs established by the 1949 Act, FETRA required the Secretary to liquidate the tobacco loans and dispose of all tobacco the associations were holding as collateral for those loans. FETRA established the Tobacco Trust Fund (capped at $10.14 billion over the ten-year transitional program) in order to fund ten years of payments to tobacco quota holders and producers, as well as the projected costs to CCC resulting from the tobacco disposal and loan liquidation.

Pursuant to FETRA, the Tobacco Trust Fund is funded principally through quarterly assessments on all domestic manufacturers and importers of tobacco products over the ten year program. "CCC calculates quarterly assessments by projecting program costs for a particular program year and allocating those costs among the manufacturers and importers of each of the six classes of tobacco products - cigarette, cigar, snuff, roll-your-own tobacco, chewing tobacco, and pipe tobacco - according to percentages set forth in the Act." Dkt. #7-2, p.4 (internal citations omitted). The initial allocation for fiscal year 2005 among the six classes of tobacco products was set forth in the statute. Title 7, United States Code, Section 518d(c)(1). The statute further provides that subsequent allocations were to be made by the Secretary pursuant to periodic adjustments to the percentages reflecting changes in the share of gross

domestic volume held by that class of tobacco product. *Id*. at § 518d(c)(2). Within each of the six product classes, the CCC further allocates program costs based on each manufacturer's or importer's share of gross domestic volume. "Gross domestic volume" means "the volume of tobacco products ... removed...." Title 7, United States Code, Section 518d(a)(2). The term "removed" means "the removal of tobacco products or cigarette papers or tubes from the factory or from internal revenue bond ... or release from customs custody ..." Title 26, United States Code, Section 5702(j).

FETRA further requires manufacturers and importers of tobacco products to submit to CCC information, consisting of, *inter alia*, copies of various Alcohol and Tobacco Tax and Trade Bureau and U.S. Customs and Border Protection forms, necessary for CCC to calculate their respective shares of gross domestic volume. Title 7, United States Code, Section 518d(h). Specifically, in order to compute market share, each entity that holds a permit from the Alcohol and Tobacco Tax and Trade Bureau to manufacture or import tobacco must submit to CCC, on a monthly basis, a CCC report entitled "Report of Tobacco Product Removals Subject to Tax for the Tobacco Transition Payment Program Assessment" ("Removal Report"). Dkt. #7-4, ¶ 6. The Removal Report provides the volume of a particular entity's taxable removals and the resulting federal excise taxes paid. *Id*. With the Removal Report, each manufacturer and importer must submit copies of the following supporting Alcohol and Tobacco Tax and Trade Bureau ("TTB") and U.S. Customs and Border Protection ("CBP") documents:

| | |
|---|---|
| **Manufacturers:** | (1) TTB Form 5000.24 - Excise Tax Return |
| | (2) TTB Form 5210.50 - Report, Manufacturer of Tobacco Products or Cigarette Papers and Tubes |
| **Importers:** | (1) CBP Form 7501 - Importer Entry Summary |
| | (2) TTB Form 5220.6 - Monthly Report - Tobacco Product Importer |

Dkt. #7-4, ¶ 6. The knowing failure to provide the required information or providing false information may result in criminal penalties pursuant to Title 18, United States Code, Section 1003, as well as a civil penalty of up to two percent of the value of the tobacco manufactured or imported in the year of the violation as determined by the Secretary. Title 7, United States Code, Section 518d(h)(3).

       At least thirty (30) days prior to the date when payment is due, CCC must provide manufacturers and importers with written notice setting forth the amount of their assessments. *Id*. at § 518d(d)(1). Assessments are due at the end of each calendar year quarter. *Id*. at § 518d(d)(3)(A). Within thirty (30) days of receiving an assessment, manufacturers and importers may challenge that assessment. *Id*. at § 518d(i)(1). Following the exhaustion of their administrative remedies, a manufacturer or importer may, at any time, seek judicial review of the agency's final determination. *Id*. at § 518d(j).

## FACTUAL BACKGROUND

In or around 2000, Native Wholesale Supply Co. ("Native") was chartered as a corporation by the Sac and Fox Tribe of Oklahoma and maintains its office on the Seneca Cattaraugus Indian Territory in Gowanda, New York. Dkt. #16, p.31, ¶ 2. According to an affidavit submitted by Arthur Montour, the President and sole owner of Native, Native's primary business is the sale of tobacco products. *Id*. at ¶ 3. Specifically, Native imports cigarettes manufactured by Grand River Enterprises Six Nations, Ltd. ("Grand River") for resale to third parties. *Id*. Grand River is wholly owned by Native Americans; Grand River produces, packages and sells tobacco products in its facility located on the Grand River Reserve in Canada. *Id*. As described by President Montour, "NWS [Native] resells the cigarettes solely to entities on terms that acknowledge the place of sale and purchase as Seneca Nation Territory. If they are sold to entities that take delivery of them off of Seneca Territory, then such purchasers are, to the best of my knowledge and belief, owned by Native Americans or their tribes." *Id*. at ¶ 4.

In or about February 2005, Native began reporting its tobacco removal data to CCC. Dkt. #7-4, p.5, ¶ 9. Native has reported to CCC the removal of tobacco products into domestic commerce for the quarter beginning October 1, 2004 through the quarter ending September 30, 2008. *Id*. at ¶ 10. Based on the Removal Reports submitted by Native, CCC imposed quarterly assessments from June 1, 2005 to December 1, 2008. *Id*. at ¶ 11. However, according to the government,

notwithstanding the fact that Native has submitted the requisite Removal Reports, Native has failed to provide CCC with copies of its CBP Form 7501 and TTB Form 5220.6 from January 2007 to the present. *Id*. at ¶ 12. Thereafter, the United States of America submitted an amended declaration in further support of its motion for summary judgment clarifying Native's reporting deficiency. Dkt. #23-3. The amended declaration states, in pertinent part,

> NWS [Native] has failed to provide to CCC its Removal Reports, CBP Forms 7501, and/or TTB Forms 5220.6 from January 2007 to the present. More specifically, NWS [Native] has not provided its Removal Report for the period July to December 2007, its TTB Form 5220.6 for the period April 2008 to the present, and its CBP Form 7501 for the period January 2007 to the present.

Dkt. #23-3, ¶ 12. In opposition to the government's motion for summary judgment, Native's President and sole owner states, "[m]y understanding is that NWS [Native] has filed with the Government all of the documents that are required pursuant to FETRA." Dkt. #16, p.32, ¶ 5.

It is undisputed that Native timely filed a challenge to the first and second quarter 2005 assessments and timely requested an administrative hearing with respect to those contested assessments. Dkt. #7-4, p.67, ¶ 4. At the request of Native's counsel, CCC consolidated Native's administrative hearing with that of three other manufacturers and importers of tobacco products. *Id*. at ¶ 5. On September 12, 2005, CCC held a pre-hearing teleconference with, *inter alia*, representatives of CCC and Native to clarify the issues and to discuss hearing logistics. *Id*. Thereafter, Native requested that the hearing be held in abeyance so that the appeals of the first and

second quarter 2005 assessments could be consolidated with appeals of the third and fourth quarter 2005 assessments. *Id*. On March 6, 2007, Native, together with the three other manufacturers and importers, submitted a memorandum setting forth its arguments on appeal. Dkt. #7-4, pp.71-77. As set forth in the opening paragraphs of the appeal, the consolidated appeals were premised on two general issues; first, the use of an improper "Base Period" to calculate assessments for all periods for which assessments had been issued and second, the supplemental or "Special Assessment" issued in the third and fourth quarters of 2005 for alleged tobacco loan inventory losses. Dkt. #7-4, pp.71-72. In a footnote, Native and the other appellants sought to preserve their rights to challenge the assessments on the grounds that they violate sovereign Native American rights and treaties, as well as certain provisions in the North American Free Trade Agreement. Dkt. #7-4, p.72, n.2. Native maintains that the issues raised on appeal were issues having general applicability to all importers and manufacturers of tobacco. Dkt. #13, p.6. CCC Hearing Officer Charles M. Berge conducted a telephonic hearing on April 13, 2007. Dkt. #7-4, p.67, ¶ 5.

CCC issued its final administrative determination with respect to Native's appeal on May 31, 2007. Dkt. #7-4, p.67, ¶ 6; Dkt. #7-4, pp.88-99. Both the government and Native agree that of all the issues raised in the administrative appeal, three issues were resolved in Native's favor and Native's outstanding balance was adjusted accordingly. Dkt. #7-2, pp.7-8; Dkt. #13, pp.6-7. Thereafter, the Secretary issued assessments to Native for fiscal years 2006 to 2008. Dkt. #13, p.8; Dkt. #16,

¶ 3. Native did not, however, file challenges to those assessments, but rather claims to have "made clear" to the Secretary that such challenges were unnecessary because a favorable decision on the appeal relating to the 2005 assessments would require the Secretary to recalculate the assessments for all subsequent years. Dkt. #16, pp. 22-24. In sharp contrast, the government maintains that Native only challenged the 2005 assessments and further, that none of the subsequent assessments imposed by CCC are in dispute. Dkt. #7-2, p.7. In addition, Native now argues that it was not the "importer of record" of more than 25 million cartons of cigarettes for which the government is seeking to collect more than $9 million in FETRA assessments. Dkt. #13, p.9. In its reply, the government contends that Native failed to administratively exhaust this issue before raising it as part of its substantive claims in the Second Filed Action and as a ground for opposition to the government's motion for summary judgment in the First Filed Action.

## PROCEDURAL BACKGROUND

On or about November 21, 2008, the government commenced this action against Native alleging Native's non-compliance with FETRA. Dkt. #1. Specifically, the government alleges that since 2005, Native has failed to pay the quarterly assessments imposed by the CCC pursuant to FETRA. *Id*. As of September 1, 2008, Native's outstanding balance, including late payment interest was $18,451,475.96. Dkt. #1, ¶ 16. Additionally, the government alleges that Native has failed to provide to CCC required documents, Alcohol and Tobacco Tax Bureau Form 5220.6 and copies of its

Customs and Border Protection Form 7501, pursuant to FETRA. Dkt. #1. In its complaint, the government seeks a monetary judgment in the amount of $18,451,475.96, plus any assessments, interest, and/or penalties that have accrued since the September 1, 2008 statement and that will accrue during the pendency of its action. The government also seeks injunctive relief compelling Native to provide CCC with copies of its Alcohol and Tobacco Tax Bureau Form 5220.6 and copies of its Customs and Border Protection Form 7501, pursuant to FETRA. *Id*. Thereafter, on December 23, 2008, Native filed its answer to the complaint, wherein it denied the substantive allegations and asserted seven "affirmative defenses," including, that the government's "claims" violate Native's treaty rights pursuant to the Jay Treaty, The Treaty of Canandaigua and the Treaty of Ghent; that the "claims" violate the sovereign rights of the Seneca Nation of Indians and its members; and that the "claims" violate due process, constitute an unconstitutional taking and are based on an unconstitutional assessment. Dkt. #3.

On or about January 9, 2009, the government filed a motion for summary judgment seeking a monetary judgment in the amount of the then-current FETRA debt owed by Native, $20,732,044.45, plus any delinquent assessments, interest, and/or penalties that will accrue during the pendency of the action. Dkt. #7. Moreover, the motion for summary judgment seeks an injunction requiring Native to provide to the Secretary of the United States Department of Agriculture, the tobacco product market share information that the government alleges Native has failed to provide pursuant to FETRA and its implementing regulations. *Id*. On the same day Native filed its

opposition to the government's motion for summary judgment in the First Filed Action, March 16, 2009, Native commenced a separate action (the Second Filed Action) against Thomas Vilsack, the Secretary of the United States Department of Agriculture, Case No. 09-CV-241. Second Filed Action Dkt. #1. On May 4, 2009, the day before oral argument was scheduled on the government's motion for summary judgment, Native filed a motion to consolidate the two actions. Dkt. #24. Oral argument on the government's motion for summary judgment was held on May 5, 2009, wherein a separate discussion was had between the Court and counsel for the parties, concerning the motion to consolidate. Dkt. #37.

In the Second Filed Action, Native "appeals" the CCC assessments for the years 2005 through 2008. Second Filed Action Dkt. #1. In its Fifth Cause of Action, Native seeks a declaratory judgment that the assessment notices it received are defective, void and of no effect by reason of the use of an improper "Base Period." *Id*. Finally, Native alleges that through its enforcement of FETRA, the Secretary has appropriated and seeks to appropriate Native's property without just compensation and without due process in violation of the "Takings Clause" and the "Due Process Clause" of the Fifth Amendment. *Id*. In its Answer to Native's Complaint in the Second Filed Action filed on May 26, 2009, the government denies the substantive allegations in the complaint, asserts twelve defenses and two counterclaims. Second Filed Action Dkt. #7.

On the same day it filed its answer in the Second Filed Action, May 26, 2009, the government filed a motion to dismiss the Second Filed Action or in the alternative to stay proceedings. Second Filed Action Dkt. #8. Oral argument on the government's motion to dismiss and a further discussion of Native's motion to consolidate was held on September 24, 2009.

## DISCUSSION AND ANALYSIS

### Consolidation

"A district court can consolidate related cases under Federal Rule of Civil Procedure 42(a) *sua sponte*." *Devlin v. Transportation Communications Int'l. Union,* 175 F.3d 121, 130 (2d Cir. 1999). Rule 42(a) provides that the court may consolidate the actions where they involve a common question of law or fact. Fed. R. Civ. P. 42(a). Consolidation should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion. *Devlin*, 175 F.3d at 130.

A district court "has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990). "In assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy." *Devlin*, 175 F.3d at 130. However, "efficiency cannot be permitted to prevail at the expense of justice – consolidation should be considered when savings of expense and

gains of efficiency can be accomplished *without sacrifice of justice.*" *Id.* (internal quotation omitted).

In the instant case, Native seeks to have the two above-captioned actions consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. It is undisputed that both actions involve common questions of law and a common set of facts - as described by Native, "the propriety of the FETRA assessments imposed against NWS [Native] for 2005 through 2008" and "the methodologies and criteria imposed by FETRA for calculating an assessment." Dkt. #26 p.7; Dkt. #32. In fact, in its opposition to the motion to consolidate, the government argues that the two cases not only involve common questions of law and a common set of facts, but are duplicative. Dkt. #32. Notwithstanding this argument, the government insists that the cases are not appropriate for consolidation because the government believes one or both of the actions may be resolved by reason of the government's dispositive motions. Moreover, the government urges this Court to stay consideration of Native's motion to consolidate until after this Court has issued its Report, Recommendation and Order with respect to the government's motion for summary judgment in the First Filed Action and motion to dismiss the Second Filed Action. Dkt. #32. At that time, the government argues, "the Court should consider consolidating the two actions only if anything remains of the two cases at that time." Dkt. #32, p.6.

In the exercise of its discretion and in consideration of equity and judicial economy, this Court concludes that consolidation of the two cases is appropriate. As

described above, the two above-captioned cases involve common issues of law that require consideration of a common set of facts. Indeed, the government concurs insofar as the government argues that the two cases are "duplicative." Accordingly, Native's motion to consolidate is GRANTED. The Clerk of Court is directed to consolidate the action, *Native Wholesale Supply Company v. Thomas Vilsack, in his capacity as Secretary of the United States Department of Agriculture*, Case No. 09-CV-241 into this action, *United States of America v. Native Wholesale Supply Co.*, Case No. 08-CV-850 and to close Case No. 09-CV-241.

**Motion to Dismiss or in the Alternative to Stay Proceedings**

As described above, the government seeks the dismissal, or in the alternative, a stay of the Second Filed Action because Native has "interrupted and stalled a pending litigation by filing another lawsuit that does nothing more than assert defenses and counterclaims that could have been and should have been asserted in the prior pending action [First Filed Action]." Second Filed Action Dkt. #15. The government further argues that this Court should dismiss or stay Native's "later-filed, duplicative action" to permit the government's action to proceed. *Id*. By reason of this Court's decision to consolidate the Second Filed Action with the First Filed Action, this Court recommends that the government's motion to dismiss or in the alternative stay the proceedings in the Second Filed Action be DENIED.

**Motion for Summary Judgment**

Both in its defenses asserted in its answer in the First Filed Action and in its claims against the government in the Second Filed Action (now consolidated with the First Filed Action), Native argues that through its enforcement of FETRA, the Secretary has appropriated and seeks to appropriate Native's property without just compensation and without due process in violation of the "Takings Clause" and the "Due Process Clause" of the Fifth Amendment. In addition to the constitutional challenges raised by Native, the issues raised in the Second Filed Action include judicial review of the agency's final determination issued on May 31, 2008, to which Native is entitled, at any time, under FETRA. So as to avoid the very real possibility of inconsistent judgments with respect to the government's motion for summary judgment and the relief sought by Native in the Second Filed Action (now part of the First Filed Action by reason of consolidation), this Court recommends that the government's motion for summary judgment be held in abeyance until such time as the issues raised by Native, including the judicial review of the agency's final determination, are resolved.

**CONCLUSION**

Based on the foregoing, Native Wholesale Supply Company's motion to consolidate (Dkt. #24) the action entitled, *Native Wholesale Supply Company v. Thomas Vilsack, in his capacity as Secretary of the United States Department of Agriculture*, Case No. 09-CV-241 with the action entitled, *United States of America v. Native Wholesale Supply Co.*, Case No. 08-CV-850 is GRANTED. The Clerk of Court

is hereby directed to consolidate the action bearing Case No. 09-CV-241 into the action bearing Case No. 08-CV-850 and to close Case No. 09-CV-241.

Based on the foregoing, it is recommended that the government's motion to dismiss or in the alternative to stay proceedings (Second Filed Action Dkt. #8) be DENIED by reason of this Court's decision to consolidate the two cases as set forth above.

It is further recommended that the government's motion for summary judgment (Dkt. #7) be held in abeyance pending resolution of the issues raised by Native in the Second Filed Action (now part of the First Filed Action by reason of this Court's Order of consolidation), including the judicial review of the agency's May 31, 2007 determination.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:	Buffalo, New York
	October 20, 2009

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**
